[ PHILADELPHIA, JANUARY 11TH, 1840. ]

## AGNEW *against* DORR and Others.

### IN ERROR.

B. & A., residing in Philadelphia, made an assignment of all their estate and effects, for the payment of such creditors as should " execute a full and sufficient release and discharge of their debts, claims and demands, respectively, to them, on or before the first day of October, 1832. S. & D. & Co., merchants in New York, and creditors of B. & A., on the first day of October, 1832, wrote a letter to the assignees, as follows : " We received per Mr. W. B. (one of the defendants) this morning, a letter stating that you were the assignees of B. & A.'s estate ; and that the release would expire at 12 o'clock, M. this day. As there has been no schedule of their affairs presented to us, or any assignment-release offered us for signature, (neither do we know of any left in this city for signature) therefore we now, and by this writing agree to become a party to the assignment and release left in your hands, dated August 2nd, 1832, on condition of the same paying twenty-five per cent. dividend on our claim—and this shall be a full and free discharge from all claims we may have against the firm of B. & A., the same as if we had signed the release in your hands." This paper was signed "S. & F. D. & Co., by S. F. D." In an action by S. & F. D. & Co. against B. & A., it was *held*, that the paper was inoperative as a release under the assignment; 1st, Because it was not under seal ; and 2nd, On account of the condition contained in it.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case, brought by Samuel F. Dorr, Francis F. Dorr, and William C. Allen, trading as S. & F. Dorr & Co. against William Brown and William Agnew, late trading as Brown & Agnew, to recover the amount of a promissory note drawn by the defendants in favour of

(Agnew *v.* Dorr.)

Mr. H. C. Corbett, dated the 6th of March, 1832, and endorsed to the plaintiffs.

The plaintiffs filed in the prothonotary's office a copy of the note upon which the suit was brought, and the defendants filed an affidavit of defence as follows:

" William Agnew, one of the defendants in the above case, being duly sworn according to law, doth depose and say, that he has a just defence to the whole of the plaintiffs' claim in the above case, the nature and character of which is as follows, to wit: the said plaintiffs, on the 1st day of October, 1832, executed unto the defendants a release, a copy of which is hereto annexed, and made a part of the affidavit, marked (A); and this deponent further says, that the releasing creditors under the said assignment, obtained fifty-nine cents in the dollar, and there is yet a further dividend to be made; that the said plaintiffs have not obtained a dividend by reason of their laches in presenting their account; that there are yet sufficient funds left with the assignees to pay them over twenty-five cents in the dollar, and proportionately with the other creditors, if the said plaintiffs will present their demand to the assignees; and this deponent further states, that upon being threatened with a suit, he, this deponent, made the tender in the manner and form stated in the annexed paper marked (B), which is to be considered part of this affidavit."

The paper referred to in the affidavit as a release, was as follows;

" New York, October 1st, 1832.

Messrs. Henry M'Keen and William H. Scott, assignees of Brown & Agnew, Philadelphia.

Gentlemen,

We received from Mr. William Brown, this morning, a letter stating that you were the assignees of Brown & Agnew's estate, and that the release would expire at 12 o'clock, M. this day.

As there has been no schedule of their affairs presented to us, or any assignment-release offered us for signature, (neither do we know of any left in this city for signature,) therefore, we now, and by this writing agree to become a party to the assignment and release, left in your hands, dated August 2d, 1832, on condition of the same paying twenty-five per cent. dividend on our claim; and this shall be a full and free discharge from all claims we may have against the firm of Brown & Agnew, the same as if we had signed the release in your hands.

Signed in our presence, this first day of October, A. D. 1832, at half-past 10 o'clock, A. M. in the presence of      S. & F. Dorr & Co.,
by
S. F. Dorr."

Francis Bennett,
W. C. Allen.

(Agnew v. Dorr.)

The following paper was also annexed to the affidavit as evidence of a tender.

"New York, January 8th, 1838.

E. H. Richards and Joseph Black called this day on S. & F. Dorr & Co. and declared to Mr. Dorr, one of the firm, that they came in, the name of Brown & Agnew, and their assignees, to tender them payment for a note, drawn by Brown & Agnew, twenty-five per cent. with interest as per their release, a copy of which they showed him,—to which he replied, they had no such note *now* in their possession; had been sent to Philadelphia for collection, had nothing to. do with it, they having no power over the note, and had no demand, against them.

| | |
|---|---|
| Amount of Note due 6th—9th Sept 1832 | 859 51 |
| 6 years, 121 days Interest, to Jan 1838 | 275 19 |
| | $1134 70 |
| 25 per cent. | 283 67 |

Amount tendered in specie."

The defendant afterwards filed a supplemental affidavit of defence, as follows:

"William Agnew being duly sworn according to law, doth depose and say, that the annexed paper marked (C) is a true copy of the assignment referred to in his original affidavit, filed in the above case; and this deponent further states, that on the 24th day of August, 1831, an inventory and appraisement was filed according to the act of assembly in such case made and provided, valuing the property assigned at eighty-five thousand two hundred and eleven dollars and seventy-eight cents; and this deponent further states, that the whole of the debts due by the assignors were but seventy-three thousand dollars, or thereabout, and that of these only about sixty-seven thousand dollars, or thereabout, were entitled to be paid under the assignment, the holders of the residue having neglected to, release."

The assignment annexed to this affidavit was dated the 2d of August, 1832, and was in the usual form. After providing for the payment of certain preferred creditors, it proceeded as follows:

"And the said assignees having so paid and satisfied the said creditors of the first class, then in the second place, that they will out of the residue or surplus in their hands, fully satisfy and pay such of the other creditors of the said Brown & Agnew, as shall execute a full and sufficient release and discharge of their debts, claims and. demands respectively, to the said Brown & Agnew, on or before the first day of October, 1832, at 12 o'clock, (meridian) but if the said residue of the trust estate should not be sufficient fully to satisfy and

pay the said creditors of the second class, that then the said assignees shall pay them rateably and in proportion to their respective claims."

A rule was obtained to show cause why judgment should not be entered for want of a sufficient affidavit of defence; which rule, after argument, was made absolute.

The defendant then took a writ of error.

Mr. *F. W. Hubbell*, for the plaintiff in error.—The plaintiff presents the release and shows a performance of the condition.

1st. The first question arising in the case is whether an instrument not under seal is a release. This has been settled by this Court. *Milliken* v. *Brown*, (1 *Rawle*, 391;) and this case has guided the profession ever since.

2nd. But it is said that the condition of the assignment of Brown & Agnew, for 'a full and sufficient release,' has not been complied with.—The assignment does not say that there shall be no conditions in the release. It must be a full release—that is, a release of all demands. It must be a sufficient release—that is a binding release. A release will bind the releasor, though he take nothing under the assignment. *Coe* v. *Hutton*, (1 *Serg. & Rawle*, 398.)—The assigned estate has paid more than twenty-five per cent—and in addition to this the plaintiffs in error tendered to the defendants in error on his own behalf, and on behalf of the defendants in error, twenty-five per cent. on their claim.—Again, the qualification of the release may be considered as a stipulation for farther security than the assignment; thus being a fraud on the other creditors. *Wentz* v. *Dehaven*, (1 *Serg. & Rawle*, 312.)

Mr. *Gerhard*, for the defendants in error.—The instrument relied on as a defence to the action if it can be called an instrument is *a parol release—an accord and satisfaction.* The alleged agreement is between the defendants in error on the one part, and the assignees of Brown & Agnew on the other part; the letter is addressed by the former to the latter; and this letter is the only evidence of the supposed contract. The subject-matter is the participation in the assigned estate, and the right to this constitutes the proposed consideration on the one side; the release of the claim of the defendants in error, that on the other side. Whether then you regard the parties to whom the letter was addressed, the subject-matter of the contract thereby proposed, or the consideration contemplated by the defendants in error, the same conclusion will be presented. The letter proposed an agreement between the defendants in error and the assignees of Brown & Agnew. Having thus ascertained the parties to the supposed agreement, the next point to be considered

is, how far any contract can be deduced from the paper or any other facts before the Court.

To constitute a valid agreement there must be proper parties— an agreement of such parties—a subject-matter for the agreement— and a sufficient agreement.  The only one of these requisites to be found in the present case, is the subject-matter of a contract.—If the letter be examined, it will be found to be written by persons entirely ignorant of their rights—of the requirements of the law in relation to the subject before them.  They evidently supposed that they could come in under the assignment, though they stipulated for twenty-five per cent., at least on their claim, as a condition to their release ; and that the assignees, as assignees, could receive such a conditional stipulation to release, as a release under the assign- ment.  It is evident that the assignees could receive no such an agreement; and hence there is wanting proper parties to the pro- posed contract.—Again, an offer was made by the defendants in error to the assignees, but where is the evidence of its acceptance ? It never was accepted by them, and never became a contract or agreement.—And lastly, there is no consideration ; which is espe- cially necessary in contracts like the one supposed to exist in the present case.  *Whitehill* v. *Wilson,* (3 *Penn. R.* 405.)  The defend- ants in error are entitled to the precise consideration stipulated for, if they are to be held bound.  That consideration was the right of participation in the assigned estate—not twenty-five per cent—as it would seem the plaintiff in error supposes—but twenty-five per cent at least, and as much more as the estate would afford; now it would seem that the assigned estate has already paid the releasing credi- tors fifty-nine per cent, and will pay him more.—The only evidence of any acceptance of the defendants in error is in W. Agnew's affidavit of defence, in which he swears that he offered $283 67 cents to persons who denied that they were the holders of the note in question; but the offer was not made to William Agnew, nor could he have accepted it, even had he been willing to have done so, within a reasonable time after we made the offer ; he even showed no inclination to accept the proposition until five years had elapsed, when even the assignees could not have barred us by an acceptance.—These are general principles, and sufficiently meet our case ; but the alleged agreement is a special one, and is specially construed by the laws.  It seems to be perfectly well settled, that an agreement to deliver goods, or a less sum of money and goods for the residue, in discharge of a greater sum, must be fully executed, otherwise it is no extinguishment.  4 *Watts,* 126, 378.  *Rice* v. *Morris,* (4 *Wharton,* 249.)  *Levering* v. *Rittenhouse,* (4 *Wharton,* 138.). *Coit* v. *Houston,* (3 *Johns. Chan.* 243.)  And a tender, even if suffi- cient in amount, made five years after an agreement, by which it would become immediately payable, if it all, can be no execution of the contract.

(Agnew v. Dorr.)

The opinion of the Court was delivered by

GIBSON, C. J.—Were not this the case of a trust, the meaning which we would be bound to assign to the technical word release, would be decisive. But even interpreting the deed like a will, which, according to the rule of Lord SOMERS, in *Sheldon* v. *Dormer*, (2 *Vern*. 311,) we are bound to do, we must say that the assignor stipulated for a legal, and not an equitable release. In popular as well as in technical apprehension the release of a debt is a discharge of it by writing under seal; and the assignor must be taken, at the utmost, to have used the word as it is used in common parlance. But there are considerations peculiar to this species of trust, which require that the trustees be not left to grope their way through doubts and difficulties in the execution of it. The office is sufficiently perilous without involving them in uncertainties which might lead to mispayments; and they are to be protected where they have followed the plain and obvious directions of the assignor. If the paper in question, then, is not a release to have brought them within the benefits of the trust, it is not a release to bring them within its disabilities; and what effect might the trustees safely have given it on an application to them for a dividend? It will not be pretended that they might safely have treated it as performance of the condition. Objection could not be made that it was executed only by one of the partners; but it is not a deed, nor does it contain the operative words of a release. Those according to LITTLETON, § 445, are remise, release and quit claim; to which Lord COKE has added renounce, and acquit, intimating at the same time that some others may have the same effect, as where the lessor grants to the lessee for life, that he shall be discharged of the rent. 1 *Inst*. 264. Perhaps at this day any words distinctly evincive of a present purpose to remit, would be as operative. In the paper before us, however, nothing is signified but an agreement to become party to an instrument which was then a hundred miles distant; and surely that is not to be taken as an equivalent for an execution of it. It is true that a verbal promise is susceptible of a verbal discharge before breach of it, as is said in *Co. Litt*. 246, *b*.; but that there can be no release of a right in a chattel without deed, appears in *Jennor* and *Hardy's case*, (1 *Leon*. 283). In its frame and execution, therefore, the paper is deficient. But independent of that, it contains a condition which would mar it were it ever so unexceptionable in other respects. The assignment was for the benefit of those who should execute "a full and sufficient release;" and the plaintiffs released only on condition that the fund should yield them at least twenty-five per cent. How could its capacity to do so, be ascertained in the first instance? yet they might be called on for pro rata dividends before all the assets were collected. Besides, a full release was intended to be an absolute one. If these

(Agnew *v.* Dorr.)

conditional discharges were admissible, the trustees might be involved in an inextricable labyrinth of discordant conditions for payment, in every proportion which the calculation or caprice of the creditors might dictate. But it is suggested on the authority of *Coe* v. *Hutton,* that the debt may be gone, though the creditor may not have entitled himself to come upon the fund. It is certain that a technical release will discharge a duty at law, without consideration for it, and that chancery will not relieve against it where the releasor has acted with full knowledge of all necessary circumstances. Not such the effect of a naked agreement which is executory, and whose force depends on the consideration which is to support it. To be let into a participation of the fund, was a consideration for which the plaintiffs stipulated as a condition precedent to parting with their debt; and their agreement could not be enforced, in equity or at law, without a performance of it. Judgment therefore was rightly given in their favour for want of a sufficient affidavit of defence.

Judgment affirmed.