[Philadelphia, February 15th, 1841.]

TYSON and Another *against* DORR and Another.

IN ERROR.

An assignment for the benefit of creditors stipulated for a "full and complete release of their respective claims" against the assignors within a certain time. A mercantile firm, creditors of the assignors, executed a general release under seal, and added to the signature the following words, "on condition that the assignment pays over 25-100 on our claim:" *Held,* that the condition was void, and the release single and absolute; and that it extinguished the debt.

Error to the District Court for the City and County of Philadelphia.

This was an action, brought by S. F. and F. F. Dorr against Samuel H. Tyson and Charles M. Tyson, trading under the firm of Tyson and Brother, upon two promissory notes drawn by the defendants in favour of the plaintiffs; one dated the 18th of the 8th month, 1831, at seven months, for $780 40, and the other dated the 1st of the 9th month, 1831, at seven months, for $1209 13.

The circumstances upon which the defence was founded, were as follows.

On the 27th of February, 1832, the defendants executed an assignment for the benefit of creditors in the following words:

" This indenture, made the twenty-seventh day of February, 1832, between Samuel H. Tyson, and Charles M. Tyson, trading under

(Tyson *v.* Dorr.)

the firm of Tyson and Brother, of the city of Philadelphia, of the one part, and Michael Drury of said city, of the other part. Whereas, the said Samuel H. Tyson, and Charles M. Tyson, trading under the firm of Tyson and Brother, are indebted to several persons in sundry sums of money, and are possessed of certain estate, which they are desirous to convey for the benefit of such of their creditors as shall execute to them a full release of their respective claims, within thirty days from the date hereof, at noon, that is to say, on or before the twenty-seventh day of March, A. D. 1832. Now this indenture witnesseth, that the said Samuel H. Tyson and Charles M. Tyson, for, and in consideration of the premises, and also of one dollar, to them in hand paid by the said Michael Drury, at or before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained, sold, assigned, transferred, and set over, and by these presents do grant, bargain, and sell, assign, transfer, and set over, unto the said Michael Drury, his heirs and assigns, all and singular, the estate, goods, chattels, moneys, credits, and effects, whatsoever and wheresoever, of them, the said Samuel H. Tyson, and Charles M. Tyson, jointly and individually, and all the estate, right, title, and interest, property, claim, and demand, of them, the said Samuel H. Tyson and Charles M. Tyson, either jointly, or individually, of, in, and to the same : to have, to hold, take, receive, and enjoy the hereby granted and assigned property, to the said Michael Drury, his heirs and assigns, upon this special trust and confidence, nevertheless, that the said Michael Drury shall collect, as soon as possible, the outstanding debts, convert certain goods, if necessary, into money, apply it as follows, and distribute the remainder of the goods in manner and form following, that is to say, that he, the said Michael Drury, shall collect such of the debts as are collectable, and pay the following individuals the respective amounts mentioned, if the debts collectable are sufficient ; if not, then the said Michael Drury shall sell, at auction, or otherwise, so many of the goods as may be necessary to make up the deficiency, to wit : the following individuals, and the amounts mentioned. To the said Michael Drury, thirty-three hundred and seventy-seven dollars, ($3,377,) to Morgan James, one thousand dollars, ($1,000,) to Samuel C. Sheppard, eight hundred dollars, ($800,) to Jennings, Thomas, Gill & Co., four hundred and twenty-nine dollars, ($429,) to O'Brien & Dunbar, six hundred dollars, ($600,) to Johns, Downing & Eckert, five hundred dollars, ($500,) to G. B. and J. B. English, two hundred and fifty dollars, ($250,) and for store and house rent, one hundred and fifty dollars, ($150.) . And upon this further trust, that after paying the sums above-mentioned, all the goods afterwards remaining in the store-house of Tyson and Brother, and all the goods deposited at auction, and in the hands of individuals, belonging to said Tyson and Brother, shall be distributed, at cost prices, to such creditors as shall sign a full and complete release of their respective claims against the said

Tyson and Brother, within thirty days, that is to say, on or before the twenty-seventh day of March next, at noon. The said distribution to be made in proportion to the amount of debts, without partiality, and by any two competent and disinterested individuals, to be appointed by the said Michael Drury; which said individuals shall have the list of creditors before them, who shall have executed the release aforesaid, and allot to each creditor a just proportion of the saleable and unsaleable goods on hand. And the said Michael Drury, if any surplus remain, after paying the said several demands and debts, and the just and necessary expenses of executing this trust, shall pay over the same to the said Samuel H. Tyson and Charles M. Tyson, in equal proportions, or to his or their executors, administrators, or assigns. And they, the said Samuel H. Tyson, and Charles M. Tyson, hereby make, and appoint the said Michael Drury, his heirs and assigns, to be their attorney, irrevocable, to collect the debts and demands due to them, make sale of the goods and property, and in general all such acts, matters, and things, for them, and in their name, to do, as they might or could do were they personally present."

A release in the following words, was executed by several creditors.

" Whereas, Samuel H. Tyson and Charles M. Tyson, lately trading under the firm of Tyson and Brother, did, on the twenty-seventh day of February, A. D. 1832, execute an assignment of all their property, in trust for the benefit of such of their creditors as should sign, seal, and deliver to them, a full and complete release of their respective claims, within thirty days from the date hereof, that is to say, on or before the twenty-seventh day of March next, at noon :

Now, therefore, in consideration of the premises, we do hereby resign, release, and forever extinguish, any claim, or claims, which we, or either of us, in our own right, or the rights of others, may have against the said Tyson and Brother, either such claim or claims as are now due, or such as may hereafter become payable."

The release was executed under seal by the plaintiffs on the 26th of March, 1832; and the following words were added to the signature of the firm: "On condition that the assignment pays over 25-100 on our claim."

The cause came on for trial, before STROUD, J., on the 5th of November, 1839, when the release was given in evidence on the part of the defendants, together with the inventory and appraisement; which were filed on the 16th of March, 1832; and from which

(Tyson *v.* Dorr.)

it appeared, that the goods and effects were valued at     $5,352 06

The outstanding debts, viz. :

| | | | |
|---|---|---|---|
| Good debts, | - - | - | $2,543 96 | |
| Doubtful, | $2,995 36 | | |
| Valued at 30 per cent. | - | $898 50 | $3,442 46 |

Total         $8,794 52

The defendants also offered in evidence the deposition of M. Drury, the assignee, taken under a commission to New York. The following passages were objected to and rejected by the learned judge; to which exception was taken.

" Sixth Interrogatory.—Has any thing been paid by you to the plaintiffs, under the assignment from the defendants? If no, why was it not done? State all the circumstances."

Answer.—" Nothing has been paid. An offer to pay money was made by me, but the plaintiffs refused to receive it. The circumstances were as follows:—I went to the counting-house of Messrs. Dorr, on the 4th of October, in the year 1837, and offered, to one of the partners, not the gentleman now present, who represents himself to be S. F. Dorr, the amount of twenty-six per cent. on the amount of the debt due them; he said that he had no authority to receive it; that he would converse with the other partner, and wished me to call again in two hours time, when one, or both of them would be in. I called accordingly, and offered Mr. Samuel F. Dorr, then in, twenty-six per cent. on the amount of the firm's debt, their claim being between nineteen hundred and two thousand dollars. He said that he could not receive it. I asked him a second time to receive it; he did not appear very well pleased at my doing so, and again refused to receive it. On the 7th of October, three days afterwards, I again went to the store of Messrs. Dorr, and saw Mr. Samuel F. Dorr, and told him that I came to pay him, as assignee to the estate of Tyson and Brother, twenty-six per cent. on the amount of his debt, in specie; he refused to receive it, and appeared angry. I then went away."

" First cross-interrogatory.—If you answer, there was a dividend offered, state particularly when, where, and at what counting-house, place of business, and when? To what person particularly, and to what firm that person belongs.

Second cross-interrogatory.—State particularly your proceedings, under the assignment, in reference to the plaintiffs, and when you acted in your capacity as assignee, and when as agent for the defendants.

Third cross-interrogatory.—Do you know any thing else material to the plaintiffs? If so, state it."

Answers.—" 1. That he hath already deposed to all he can say in reply to this interrogatory, in his answer to the sixth interrogatory,

on the part of the defendants.  The offer referred to in the answer to the said sixth interrogatory, was made to Samuel F. Dorr; but what was the style of the firm to which he belonged, at the time, or now belongs, witness does not know; but he said he had the conducting of the claim on Tyson and Brother, and had employed an attorney in Philadelphia, he believes, by the name of Miles, to attend to the claim.

2. That as to the proceedings under the assignment, in reference to the plaintiffs, he hath nothing further to state, that he knows of. That he left Philadelphia eighteen months ago: that he has never made any legal renunciation, as assignee, but presumes, that since he left Philadelphia he has been acting as agent of the defendants; the estate being closed and wound up, or nearly wound up, he presumed he had nothing further to do; and being absent from the city of Philadelphia, he was not acting under the assignment, unless legally called upon so to do.  [He further states, in answer to this interrogatory, I tendered the money as assignee to the estate of Tyson and Brother, and told Mr. Dorr that I did so; but he appeared so vexed at the time, and angry, that I believe he did not hear me through his passion; that since I have been in New York, I consider myself as acting as assignee and agent for the defendants: this matter of S. & F. Dorr being the only thing, called upon me to act as assignee.]

3. He received the specie above spoken of from the defendant's attorney.  He had it with him on the 7th of October last, when at the counting-house of Messrs. Dorr.  I told Mr. S. F. Dorr I came prepared to pay it to him; but did not show it to him, because he refused to receive it, and told me so.  The specie was partly in gold, and partly in silver."

The evidence being closed, the counsel for the defendants requested the court to charge the jury,

" 1. That the release, signed by the plaintiffs, is good against them.

2. That the condition annexed to the signature of the plaintiffs, to the release, is void.

3. That it was the duty of the plaintiffs, and of the other releasing creditors, to see that the assignee, M. Drury, performed the trust committed to him, and to call upon him to perform it; and that until they had done so, they cannot maintain the present suit.

4. That it was not the duty of the defendants, nor could they, by law, cite the assignee to perform the trust committed to him, or to file his accounts.

5. That the neglect of the assignee, M. Drury, or his non-compliance, if any, with the terms of the trust, cannot prejudice the defendants.

(Tyson v. Dorr.) ,

6. That under the written evidence in this case, the release by the plaintiffs is a bar to this suit.

7. That the plaintiffs cannot maintain this suit, until they show that the condition annexed to the release has failed."

The judge then charged the jury as follows:

" The whole case depends upon a question of law.　The assignment of the defendants is a peculiar one, without precedent, I believe, in this country.　(The judge here stated the substance of the assignment.)　The assignment was altogether void at the outset; or at least voidable at the option of the creditors; I apprehend, however, it was void.

(The judge then read the release.)　This is a conditional release, not a full release.　The plaintiffs had no interest whatever under the assignment.　The condition annexed to their release by the plaintiffs, was a valid one, but it prevented the assignee from distributing the goods to the plaintiffs.

Upon the points proposed by the defendants' counsel, I charge as follows:

Upon the first point, I say, That the release would be good against the plaintiffs, if there had been a compliance on the part of the defendants with the condition.

As to the second point, I say, that the condition annexed by the plaintiffs, was not a void one.

To the third point,—the release not being in accordance with the terms of the assignment, the plaintiffs had no interest in the assignment, and it was, consequently, not their duty to call upon the assignee for his execution of the trust committed to him.

To the fourth point, I answer as requested by the defendants' counsel.

The fifth point, I consider irrelevant, for the reason given by me in answer to the second question.　And the sixth point I answer negatively; the release is not a bar. ·

To the seventh point, I answer, it is matter of defence; a compliance with the condition should have been shown by the defendants.

On the whole, the defence has utterly failed; and your verdict should be for the plaintiffs."

Exceptions were taken to this charge; and a verdict having been given in conformity with it, this writ of error was taken by the defendants; and the following errors were assigned:

" 1. The judge erred in charging that the plaintiffs below had, and took no interest under the assignment of the defendants below.

2. The judge erred in charging that the condition annexed by the plaintiffs below, to their signatures to the release, was a valid con-

(Tyson· *v.* Dorr.)

dition, and·yet,·that it prevented the assignee from distributing the goods to the plaintiffs below.

3. The judge erred in charging that the plaintiffs below were bound to perform said condition, and to show performance thereof.

4. The judge erred in charging that the release, executed by the plaintiffs below, did not bar their present claim; and did not bind them.

5. The judge erred in charging that the plaintiffs below were not bound to cite the assignee to file his accounts, and perform the trust committed to him.

6. The judge erred in charging that the neglect of the assignee, or his non-compliance, if any, with the terms of the trust, were irrelevant to the issue.

7. The judge erred in charging that the assignment of the defendants below, for the benefit of their creditors, was void.

8. The judge erred in refusing the defendants below permission to give in evidence the answers to the sixth interrogatory in chief, put to M. Drury, under a commission, and the answers to the first, third, and part of the second cross-interrogatory.

9. The court below erred in giving judgment on the points reserved at the trial, in favour of the plaintiffs below."

Mr. *G. M. Wharton,* for the plaintiffs in error, cited *Coe* v. *Hutton,* (1 *Serg. & Rawle,* 398.)   *Wentz* v. *De Haven,* (1 *Serg. & Rawle,* 317.)  2 *Com. Dig. Condition,* A. 8.   *Co. Litt.* 274, 6.   *Rush* v. *Hart,* (14 *Serg. & Rawle,* 226.)

Mr. *Miles,* contra, cited *Sheepshanks* v. *Cohen,* (14 *Serg. & Rawle,* 35.)  *Stoddart* v. *Allen,* (1 *Rawle,* 258.)  *Agnew* v. *Dorr,* (5 *Wharton,* 131.)   *Lyman* v. *Clark,* (9 *Mass. Rep.* 235.)   *Hamilton* v. *Elliott,* (5 *Serg. & Rawle,* 375.)   *Jackson* v. *Crysler,* (1 *Johns. Cases,* 125.) *Gray* v. *Blanchard,* (8 *Pickering,* 292.)   *Solly* v. *Forbes,* (4 *Moore,* 448 ; 2 *Brod. & Bingh.* 38 ; 6 *Eng. Com. Law Rep.* 11.)   *Lampson* v. *Cork,* (1 ·*D. & R.* 211 ; 5 *Barn. & Ald.* 606 ; 7 *Eng. Com. Law Rep.* 205.)   *Payler* v. *Hamershaw,* (4 *Maule & Selw.* 423.)   *Simons* v. *Johnson,* (3 *Barn. & Ad.* 175 ; 23 *Eng. Com. Law Rep.* 51.) *Richards* v. *Richards,* (2 *Barn. & Ad.* 44 ; 22 *Eng. Com. Law Rep.* 119.)

The opinion of the court was delivered by

SERGEANT, J.—In *Agnew* v. *Dorr,* (5 *Wharton,* 131,) the assignment required a full and complete release by the creditors.  A condition inserted in his· release·by a creditor, that ·he should receive· twenty·

(Tyson v. Dorr.)

five per cent. of his debt, was held to be bad, as not in compliance with the terms of the assignment, and as throwing on the assignees difficulties and embarrassments incompatible with the execution of their trust.  But in that case there was no release executed; there was merely a letter written by the creditor, agreeing to become a party to the assignment and release, on condition of the fund paying twenty-five per cent. of his claim.  This was held to be in its nature merely an executory agreement which could not be enforced without a consideration, and as the creditor could not come upon the fund, his agreement to release would not be enforced.  In the present case there is not merely an executory agreement, but a technical release, executed under hand and seal; and the result is different. For, as is said in *Agnew* v. *Dorr*, it is certain that a technical release will discharge a duty at law, without consideration, and that chancery will not relieve against it, where the releasor has acted with full knowledge of all necessary circumstances.  The release, therefore, is in the present case clearly binding.

If, then, the release be binding, and the condition inoperative, by reason of its repugnancy to the terms of the assignment, and the impossibility that it should be performed, the consequence is, that the release remains single and absolute, and extinguishes the debt. For the principle of law has long been settled, that if one gives an obligation with condition to be void on the performance of that which is impossible at the time of its execution, the bond is single, and it is the same as if there were no condition at all; and so of a feoffment.  *Co. Lit.* 206.  *Sav.* 96.  *Leon.* 189.  *Bro.* 155.  1 *Bac. Ab.* 649; and the distinction is drawn between a bond or deed executed, and an agreement executory; for if an estate be to arise, or a duty to commence on a precedent condition that is impossible, they can never have effect.

Now the condition of this release is, that the assignment pays over twenty-five per cent. of the claim.  But this could never be; for the assignees could not divert the funds from their appropriate channel, which was first to the preferred creditors; next amongst those who executed perfect releases; and lastly, to the assignors. Under no possible circumstances could the assignment pay the releasors anything whatever, if they did not release according to the terms of the assignment; nor could the assignees voluntarily pay any portions, without a breach of their trust, which the law will not suppose beforehand, nor recognise when done as valid in its operation.

Again, a man cannot release a personal action as an obligation, with a condition subsequent, but the condition will be void: for a personal action once suspended is extinguished forever.  1 *Rol. Ab.* 412.  For instance, a release, if once operative, cannot be avoided: so that one may make a release to operate on a contingency, but cannot make a release to be void on a condition.  1 *Inst.* 274, b.  A

(Tyson *v.* Dorr.)

thing once extinguished cannot be revived; or, in other words, if the release be on a condition subsequent, the release is good, and the condition void. 2 *Shep. Touch.* by *Preston,* 325, *Law Lib.* 91st part, 154. The present is not an instrument by which on a future contingency the release is to become operative: but a release first with a condition which is intended to defeat it subsequently, if the releasor should not receive twenty-five per cent.; and the release remains binding, though such condition be never performed.

. Judgment reversed.